UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

Adam H. Nagle

    v.                              Civil No. 08-cv-445-JL[1]

Warden, New Hampshire State Prison, et al.

**REPORT AND RECOMMENDATION**

Pro se plaintiff Adam H. Nagle has filed a complaint, pursuant to 42 U.S.C. § 1983, alleging that defendants have violated his rights under the First, Eighth and Fourteenth Amendments to the United States Constitution and New Hampshire law (document no. 1). Seeking injunctive and monetary relief, he brings this action against William L. Wrenn, Commissioner of the New Hampshire Department of Corrections ("NHDOC"), and three employees of the New Hampshire State Prison ("NHSP").[2] The complaint is before me for preliminary review to determine

---

[1] Nagle has filed two related actions, civil nos. 08-cv-413-JL and 08-cv-432-SM, in which he alleges similar claims against additional defendants.

[2] Named as defendants are the following NHSP employees: Warden Richard M. Gerry; and corrections officers Schofield, First Name Unknown ("FNU") and Pellitier, FNU.

whether, among other things, it states a claim upon which relief might be granted. See 28 U.S.C. § 1915A; United States District Court for the District of New Hampshire Local Rule ("LR") 4.3(d)(2).

For the reasons stated below, I find that Nagle has stated the following claims against Gerry, Schofield and Pellitier: (1) Eighth Amendment claims alleging use of excessive force; (2) First Amendment retaliation claims alleging denial of the right to petition the government for redress of grievances; and (3) related state law claims alleging intentional infliction of emotional distress. I recommend dismissal of all remaining claims. Also filed is a request for injunctive relief (document no. 1). I recommend that a preliminary injunction hearing be scheduled with regard to Nagle's claims alleging use of excessive force, retaliation and intentional infliction of emotional distress.

## Standard of Review

Under this court's local rules, when an incarcerated plaintiff commences an action pro se and in forma pauperis, the magistrate judge is directed to conduct a preliminary review. LR 4.3(d)(2). In conducting the preliminary review, the court

liberally construes pro se pleadings, however inartfully pleaded. See Erickson v. Pardus, ___ U.S. ___, 127 S. Ct. 2197, 2200 (2007) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976) and Haines v. Kerner, 404 U.S. 519, 520-21 (1972) to construe pro se pleadings liberally in favor of the pro se party). See also Castro v. United States, 540 U.S. 375, 381 (2003) (noting that courts may construe pro se pleadings so as to avoid inappropriately stringent rules and unnecessary dismissals of claims). "The policy behind affording pro se plaintiffs liberal interpretation is that if they present sufficient facts, the court may intuit the correct cause of action, even if it was imperfectly pled." Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997).

    At this preliminary stage of review, all factual assertions made by the plaintiff and inferences reasonably drawn therefrom must be accepted as true. See Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996)(stating the "failure to state a claim" standard of review and explaining that all "well-pleaded factual averments," not bald assertions, must be accepted as true).  This review ensures that pro se pleadings are given fair and meaningful consideration.

**Background**

This action stems from Nagle's confinement in the secured housing unit ("SHU") at the NHSP and corrections officers' alleged use of excessive force against him while he was experiencing seizures. Upon entering SHU, Nagle notified officers that he suffered from a medical condition that caused him to experience seizures. He previously suffered two seizures while confined at the NHSP, and during one episode he sustained injuries to his head and neck and required hospitalization. While confined in a cell on "A" tier, Nagle and corrections officers informed his cellmate(s)[3] of his medical condition and instructed them to notify officers by flagging for assistance when Nagle was experiencing a seizure. The officers allegedly explained that "flagging" was waiving a white sheet or towel outside a cell door to alert officers of the need for emergency assistance. On several occasions, Nagle's cellmates on "A" tier flagged officers for emergency assistance when he was experiencing seizures, however, fifteen to thirty minutes elapsed before officers responded.

---

[3]I construe Nagle's reference to "occupant" to mean cellmate(s).

The incident at issue in this action occurred in June 2008, while Nagle was confined in SHU and was awaiting available bed space in the Hancock Building.  During that time, Parent allegedly was in charge of SHU, and all other officers reported to him.  While Nagle was experiencing a seizure, officers allegedly entered his cell and ordered his cellmate to leave.  Several other officers, were standing at the cell door.  At that time, witnesses allegedly recounted, Nagle was actively in a seizure and experiencing convulsive muscle movement along with clenched hands and eyes rolling into the back of his head.  He allegedly was nonresponsive.

Parent allegedly held Nagle by the wrists and, when his arms convulsively pulled away, ordered Jorgenson and the other officers to "take him down."  The officers and Parent pulled Nagle off of his bed and onto the floor, face first.  Parent then ordered the officers to flip Nagle onto his back while he was still actively seizing.  Parent further ordered the officers to pin Nagle down by the arms, legs and head while Parent strattled him.  At that point, while Jorgenson was kneeling on Nagle's right wrist with both knees and attempting to pin down his arm, Nagle experienced a seizure-induced muscle spasm and lifted the

officer off of the ground.  The other officers knelt with full weight on Nagle's arms, legs, head, neck and groin, and Parent continued to strattle Nagle and began slapping his chest and face.  Within a few minutes, the seizure allegedly faded, and Nagle was checked by a nurse and given ice for a large purple lump on his head.  As a result of defendants' actions, Nagle allegedly sustained injuries to his head, forehead, neck, right elbow, left shoulder and groin.  He also allegedly sustained injuries to his joints from hyperextension and endured unnecessary pain and suffering.

Over a period of approximately four to five months, Nagle allegedly repeatedly reported the deprivations and resulting injuries to Gerry, Schofield and Pellitier, however, they failed to adequately remedy the problem or take sufficient corrective action.  In grievances submitted to Gerry, Nagle explained his fear of retaliation and his fear of further physical abuse by corrections officers for his filing of complaints.  Gerry allegedly refused to investigate his claims of mental and physical abuse, and Gerry and Schofield refused to transfer him to another facility.

Nagle further alleges that defendants interfered with and/or

thwarted his attempts to file administrative grievances "on multiple occasions."  His confidential requests to the warden allegedly were intercepted and his grievances filed "through the chain of command" and with "the Commissioner and Warden [were] returned to no avail."  In addition, he allegedly was "harassed, browbeaten and run in circles" with regard to his attempts to exhaust his administrative remedies.  Lastly, Nagle alleges that defendants subjected him to disciplinary actions and sanctions in retaliation for his filing of administrative grievances.  He now brings this civil rights action, alleging that defendants' acts and omissions violate his rights under Section 1983 and New Hampshire law.

## Discussion[4]

I.   Section 1983 Claims

Section 1983 creates a cause of action against those who, acting under color of state law, violate federal law.  See 42 U.S.C. § 1983; Parratt v. Taylor, 451 U.S. 527, 535 (1981); Rodriguez-Cirilo v. Garcia, 115 F.3d 50, 52 (1st Cir. 1997).  In

---

[4]The claims as identified herein will be considered for all purposes to be the claims raised in the complaint.  If Nagle disagrees with this identification of the claims, he must do so by proper objection to this report and recommendation or by properly moving to amend his complaint.

order to be held liable for a violation under Section 1983, a defendant's conduct must have been a cause in fact of the alleged constitutional deprivation.

    A.   <u>Use of Excessive Force</u>

In June 2008, Schofield and Pellitier allegedly used excessive force against Nagle while he was experiencing a seizure, thereby violating his Eighth Amendment right to be free from cruel and unusual punishment. Construed liberally, the complaint further alleges that Wrenn and Gerry condoned the actions by Schofield and Pellitier.

In a prison setting, the use of excessive force against a prisoner is analyzed under the Eighth Amendment prohibition against cruel and unusual punishment. <u>See</u> <u>Whitley v. Albers</u>, 475 U.S. 312, 319-20 (1986). <u>See</u> <u>also</u> <u>See</u> <u>Davis v. Rennie</u>, 264 F.3d 86, 98 n.9 (1st Cir. 2001) (citing <u>Hudson v. McMillian</u>, 503 U.S. 1, 4 (1992)("A convicted prisoner may bring a claim for use of excessive force under the Eighth Amendment.") To state an Eighth Amendment claim for the use of excessive force by prison guards, an inmate must demonstrate "unnecessary and wanton infliction of pain." <u>Whitley</u>, 475 U.S. at 319-20. "[T]he core judicial inquiry is . . . whether force was applied in a good-faith effort

to maintain or restore discipline, or maliciously and sadistically to cause harm." See Hudson, 503 U.S. at 7 (citing Whitley, 475 U.S. at 320-21).  To prevail on an excessive force claim, a plaintiff must show that the alleged use of force is "objectively sufficiently serious or harmful enough" to be actionable.  Hudson, 503 U.S. at 8; accord United States v. Walsh, 194 F.3d 37, 50 (2d Cir. 1999).  An excessive force claim may be established even if the plaintiff does not suffer serious or significant injury, if he can demonstrate that the amount of force used is more than de minimis, or otherwise involves force "repugnant to the conscience of mankind."  Hudson, 503 U.S. at 9-10.

    Here, Nagle alleges that in June 2008 while he was confined in SHU, Schofield and Pellitier entered his cell and used excessive force against him while he was experiencing a seizure and while he was nonresponsive.  Parent allegedly restrained Nagle and ordered Schofield and Pellitier to "take him down." Nagle appears to allege that Schofield and Pellitier were among the corrections officers who pulled him off of his bed and onto a concrete floor, face first, and who flipped him onto his back while he was still actively seizing.  Nagle appears to further

allege that Schofield and Pellitier were among the officers who pinned him down and knelt with full weight on his right wrist, arms, legs, head, neck and groin, while Parent strattled Nagle and began slapping his chest and face.  The actions by Schofield and Pellitier allegedly demonstrated deliberate indifference to Nagle's safety.

As a result of defendants' actions, Nagle allegedly sustained injuries to his head, forehead, neck, right elbow, left shoulder, joints and groin and endured unnecessary pain and suffering.  Nagle claims that because he was on a secure mattress with blankets and padding to protect his head, it was unnecessary for defendants to move him.  Defendants allegedly are trained in basic emergency response and should have been able to understand the possibility of injury.  Nothing in the record suggests that Nagle provoked the incident or otherwise posed an immediate threat to the safety of the corrections officers or the security of the prison.  Nor is there any indication that excessive force was used by the officers in a good-faith effort to maintain or restore discipline.  Through a series of inmate requests slips filed over a period of four months, Nagle allegedly reported the deprivations and resulting injuries to Gerry, Schofield and

Pellitier, however, they failed to remedy the problem or take any corrective action.  For purposes of preliminary review, I find that Nagle has alleged Eighth Amendment excessive force claims against Gerry, Schofield and Pellitier.

In addition, Nagle broadly alleges that his "grievances from as high as the Commissioner and Warden [have been] returned to no avail, as well as requests going through the chain of command." To the extent he alleges a claim against Wrenn, Commissioner of the NHDOC, I conclude that he has failed to state a cognizable claim against him.  There is no indication in the record that Wrenn was adequately informed of the incident or that he condoned the actions by the subordinate officers.  Because Nagle has failed to allege sufficient predicate facts to state a cognizable Eighth Amendment excessive force claim against Wrenn, I recommend dismissal of the claim against him.

    B.    <u>Retaliation</u>

Construed liberally, the complaint alleges that defendants retaliated against Nagle in reprisal for his First Amendment right to file administrative grievances.  I liberally construe this claim to be brought against Gerry, Schofield and Pellitier.

To prevail on a First Amendment retaliation claim, a

plaintiff must show "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action."  Davis v. Goord, 320 F.3d 346, 352 (2d Cir. 2003).  It is well-established that prisoners have a First Amendment right to petition the government for redress of grievances, and prison officials may not retaliate against prisoners for exercising that right.  See Shabazz v. Cole, 69 F. Supp. 2d 177, 197 (D. Mass. 1999).  See also Fogle v. Pierson, 435 F.3d 1252, 1264 (10th Cir. 2006) (noting that "[s]everal circuits have held that a prisoner's first amendment right to petition the government for redress of grievances encompasses the filing of inmate administrative appeals."); Walker v. Thompson, 288 F.3d 1005, 1008-09 (7th Cir. 2002) (holding that inmates are entitled under the First Amendment to file grievances and lawsuits, and officers may not retaliate against them for exercising that right).

    Construed liberally, the complaint in this action alleges that Nagle engaged in constitutionally protected conduct through the filing of administrative grievances.  Defendants allegedly thwarted his attempts to exhaust administrative remedies and

intercepted his confidential requests to the warden.  Nagle further alleges that Pellitier witnessed a NHSP employee intercept his sealed inmate request slip, which was marked "confidential" and "warden" and which was placed in the outgoing mailbox.  Pellitier allegedly denied Nagle's request to investigate the incident and issued a disciplinary report against him in retaliation for filing the administrative grievance.  In addition, Nagle alleges that he has been "harassed, browbeaten and run in circles for these attempts at remedy."  Lastly, Nagle alleges that defendants retaliated by subjecting him to disciplinary actions and sanctions, including confinement to his cell during afternoon recreation time for a period of twenty days, loss of canteen privileges for twenty-five days (suspended) and five days of punitive segregation (suspended).  He appears to allege that defendants' retaliatory actions were motivated by his filing of administrative grievances and therefore were taken against him in reprisal for his exercise of First Amendment freedoms.

As a result of defendants' actions, Nagle allegedly was denied the right to petition the government for redress of administrative grievances.  Nagle allegedly reported the

deprivations and resulting injuries to Gerry, Schofield and Pellitier, however, they failed to remedy the problem or take any corrective action.  Accepting Nagle's allegations as true, which I must do at this preliminary stage of the proceedings, I conclude that he has stated cognizable First Amendment retaliation claims against Gerry, Schofield and Pellitier.

    C.    <u>Request for a Transfer</u>

Construed liberally, the complaint alleges that Gerry and Schofield violated Nagle's Fourteenth Amendment right to due process by denying his request to be transferred to another facility.  In addition, Nagle renews his request for a transfer from the NHSP to another facility on the basis that he fears further retaliation and abuse by the defendants.

The "Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner. . ."  <u>Bazzetta v. McGinnis</u>, 423 F.3d 557, 566 (6th Cir. 2005)(citing <u>Sandin v. Conner</u>, 515 U.S. 472, 478 (1995)).  <u>See</u> <u>also</u> <u>Moody v. Daggett</u>, 429 U.S. 78, 88 n.9 (1976)(stating that not every prison action that adversely affects the prisoner requires due process, such as transfer to a substantially less agreeable prison).  A prisoner has no constitutional right to be

incarcerated in a certain facility, even if life in one prison is much more disagreeable.  See Olim v. Wakinekona,  461 U.S. 238, 245 (1983).  See also Meachum v. Fano, 427 U.S. 215, 225-28 (1976)(holding that it is well-settled that a prisoner has no constitutional right to be incarcerated in a particular prison and that he may be transferred for any reason or for no reason at all, regardless of differing conditions).

Here, although Nagle allegedly fears further abuse and retaliation by corrections officers, he has not identified any direct threat; nor has he shown that he requested Gerry or Schofield to provide him with protective custody or that any such request was denied.  See Armstrong v. Fittje, 2008 WL 686142, No. 4:07cv547-RH/WCS, slip op. at *1 (N.D. Fla. March 9, 2008). There is no indication that efforts to protect his safety could not be made by Gerry, Schofield or other prison officials at the NHSP.  Id.  For the foregoing reasons, I conclude that the refusal by Gerry and Schofield to transfer Nagle to another facility does not rise to the level of a constitutional violation.  I therefore recommend that the claims against them be dismissed.  I further conclude that Nagle's instant request to be transferred to another facility does not rise to the level of a

constitutional violation. I therefore recommend that his request for a transfer be denied.

## II. State Law Claims

Nagle alleges that the same conduct that violated his federally protected rights to be free from use of excessive force and retaliation also violated his right to be free from intentional infliction of emotional distress under New Hampshire law. He appears to allege that by using excessive force against him while he was suffering a seizure, or by condoning such actions, Gerry, Schofield and Pellitier caused him to experience severe emotional distress and harm. Nagle further alleges that as a result of defendants' actions, he experiences emotional distress and fears further retaliation.

Nagle's state law claims allegedly stem from the injuries he sustained as a result of defendants' use of excessive force and as a result of defendants' retaliation for his filing of administrative grievances and/or complaints. Nagle's state law claims, therefore, appear to be so related that they form part of the "same case or controversy" of the Eighth Amendment excessive force claim and the First Amendment retaliation claim. See 28 U.S.C. § 1367(a) (providing for supplemental jurisdiction over

claims that are so related they form part of the same case or controversy).  Accordingly, I conclude that this court may exercise supplemental jurisdiction over Nagle's state law claims for intentional infliction of emotional distress against Gerry, Schofield and Pellitier.

III. Official Capacity

Construed liberally, the complaint seeks injunctive and monetary relief for wrongs committed by the defendants as state actors in their official capacities.  It is well-settled that the Eleventh Amendment bars suits against state entities and state agents working in their official capacities unless the state has expressly waived immunity, which has not been done by New Hampshire for actions brought under Section 1983.  See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 144 (1993) (absent waiver, neither a State nor agencies acting under its control may be subject to suit in federal court); Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989)(holding that neither a state nor its officials acting in their official capacities are "persons" under Section 1983).  Official capacity suits against officers of an agency are simply "another way of pleading an action against an entity of which an

officer is an agent." Monell, 436 U.S. at 690 n.55. To the extent Nagle brings official capacity claims for monetary relief against the state defendants, who are employees of the NHSP, I recommend that those claims be dismissed.

On the other hand, official capacity actions against state actors for prospective injunctive relief are not treated as actions against the state and may be considered under Section 1983. See Will, 491 U.S. at 71 n.10. Thus, Nagle is not barred from bringing claims for prospective injunctive relief against the defendants in their official capacities.

## Conclusion

For the reasons stated above, I find that Nagle has stated the following claims against Gerry, Schofield and Pellitier: (1) Eighth Amendment claims alleging use of excessive force; (2) First Amendment retaliation claims alleging denial of the right to petition the government for redress of grievances; and (3) related state law claims alleging intentional infliction of emotional distress. I recommend dismissal of all remaining claims. Accordingly, by separate order issued simultaneously herewith, I authorize the above viable claims to proceed.

With regard to Nagle's request for injunctive relief

(document no. 1), I recommend that a preliminary injunction hearing be scheduled pertaining to his claims of excessive force, retaliation and intentional infliction of emotional distress.

If this recommendation is approved, the claims as identified in this report and recommendation, will be considered for all purposes to be the claims raised in the complaint. If the plaintiff disagrees with the identification of the claims herein, he must do so by objection filed within ten (10) days of receipt of this report and recommendation, or he must properly move to amend the complaint.

Any further objection to this report and recommendation must be filed within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the district court's order. See 28 U.S.C. § 636(b)(1); see also Unauthorized Practice of Law Committee v. Gordon, 979 F.2d 11, 13-14 (1st Cir. 1992); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986).

_____
James R. Muirhead
United States Magistrate Judge

Date: December 24, 2008
cc:   Adam H. Nagle, pro se